# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NADEJA BEASLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 08 C 4205 |
| | ) |
| UAW UNION, LOCAL 3212, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Presently before us is the Motion for Summary Judgment filed by Defendant UAW Local 3212 ("the Union"). Plaintiff Nadeja Beasley alleges that the Union breached its duty of fair representation. As set forth below, we grant the Union's motion and dismiss this action.[1]

## BACKGROUND FACTS[2]

Local 3212 previously served as the collective bargaining representative for the employees of QIS, Inc., Beasley's former employer. QIS was a supplier to the Ford Motor Company assembly plant located on the South side of Chicago. In April 2007, QIS suspended

---

[1] As a preliminary matter, Beasley's motion for summary judgment is untimely and will not be considered. Per our order of October 8, 2009, (Dkt. No. 32), all motions for summary judgment were to be filed in open court on January 21, 2010. On that date, the Union appeared for the scheduled status hearing and submitted its motion for summary judgment. Beasley did not appear for the hearing and, moreover, did not file a motion of her own until nearly two months later. (*See* Dkt. Nos. 42–43.) We construe Beasley's March 17, 2010 filing as her operative response to the Union's motion. (Dkt. No. 43.)

[2] Beasley admitted the facts presented by the Union because she neglected to respond to those statements of fact as required by Local Rule 56.1. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). Beasley also declined to offer additional statements of fact in support of her opposition to the pending motion. Unless otherwise noted, the facts described herein are thus undisputed and culled from the Union's Rule 56.1 statements of fact and exhibit.

and then terminated Beasley along with a co-worker, Adam Castellano. The Union filed grievances with QIS on behalf of both discharged employees. Although an umbrella labor organization would not agree to cover the costs of arbitration due to Beasley's and Castellano's low likelihood of success, the Union's Executive Board and membership decided to pursue arbitration on behalf of Beasley and Castellano at the Union's expense. The Union retained a private law firm to represent the grievants in the arbitration, though hiring outside counsel for such a purpose is rare. Attorney Ronald Schwartz represented the grievants during the arbitration.

On February 28, 2008, the arbitrator ruled in favor of Beasley and Castellano. He ordered QIS to reinstate them with a make-whole backpay remedy, less any interim earnings and less the equivalent of a 30-day suspension, which he imposed in lieu of discharge. Within two weeks, QIS offered the reinstatement, to become effective on March 11, 2008. However, QIS suddenly also announced that it was terminating its Chicago operations and laying off all bargaining unit employees represented by the Union, effective March 8, 2008. The Union then attempted to secure the backpay award for Beasley and Castellano from QIS management in Michigan.

These efforts proved unsuccessful, however, and QIS filed for bankruptcy protection two months later on May 5, 2008. (Def.'s Facts, Decl. of Roosevelt Williams ¶ 38.) The Union filed a Proof of Claim with the bankruptcy court, seeking the backpay QIS owed to Beasley and Castellano. Nonetheless, QIS was liquidated and no distributions were made to unsecured creditors, including the two grievants. (Reply at 2.)

Against this general backdrop, Beasley raises three specific claims, which we have

garnered from her response brief. Though her allegations have changed over the course of this litigation, Beasley ultimately does not contend that the Union breached its duty of fair representation by failing to represent her during the arbitration hearing.[3][4] To the contrary, her dispute with the Union stems solely from its actions after the arbitration victory.

Beasley first claims that the Union breached its duty of fair representation in connection with a charge she filed against QIS with the National Labor Relations Board ("NLRB"). (Resp. at 8.) Beasley alleges that the UAW Executive Board told her to file an NLRB charge on behalf of her fellow QIS employees. (*Id*. at 4.) She did so on April 18, 2008, alleging that QIS breached its collective bargaining agreement and violated federal labor law by failing to notify the Union and its members prior to closing the Chicago facility and negotiate a closeout agreement. (Pl.'s Ex., 4/18/08 NLRB Charge filed by Beasley against QIS.) An NLRB representative, Cathy Brodsky, contacted both Beasley and the Union's president, Roosevelt Williams, as part of the investigation into the charge. Williams allegedly informed Brodsky that the Union did not support the charge and that Beasley was not on the QIS bargaining committee and, therefore, not authorized to submit a charge. (Resp. at 4, 8.) Beasley contends that the Union thus lied about her status to Brodsky and deprived her of the ability to negotiate a closeout package on behalf of her QIS co-workers. (*Id.*)

---

[3] Although, in her response, Beasley states that she "disagrees with the Defendant's contentions" that she has no cause of action "based on . . . her hearing for termination," the remainder of her brief belies this claim. (Resp. at 7–10.) She does not discuss the arbitration at all when describing her current grievance with the union. (*Id.*)

[4] Nor could she, as there is no dispute that the Union in fact hired outside counsel to represent her and her co-grievant, resulting in a favorable arbitration decision and award. (Def.'s Facts ¶¶ 4–16.)

Second, she alleges that Williams lied when he told the Union's attorney, Schwartz, that she was "being uncooperative and refusing to supply [the Union] with documents to obtain her backpay." (*Id.* at 1, 5, 8–10.) Third, Beasley claims that she was denied access to the Union's unnamed bankruptcy attorney, which the Union allegedly provided to her co-grievant, Castellano. (*Id.* at 5, 10.)

## STANDARD OF REVIEW

Summary judgment is proper only when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed R. Civ. P. 56©. A genuine issue for trial exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). This standard places the initial burden on the moving party to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (internal quotations omitted). Once the moving party meets this burden of production, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading" but rather "must set forth specific facts showing that there is a genuine issue [of material fact] for trial." Fed. R. Civ. P. 56(e). In deciding whether summary judgment is appropriate, we must accept the nonmoving party's evidence as true, and draw all reasonable inferences in that party's favor. *See Anderson*, 477 U.S. at 255.

## ANALYSIS

Because the collective bargaining system "subordinates the interests of an individual

employee to the collective interests of all employees in a bargaining unit," *Vaca v. Sipes*, 386 U.S. 171, 182, 87 S. Ct. 903, 912 (1967), the exclusive bargaining agent bears "the responsibility and duty of fair representation," *Humphrey v. Moore*, 375 U.S. 335, 342, 84 S. Ct. 363, 368 (1964); *see Cleveland v. Porca Co.*, 38 F.3d 289, 295 (7th Cir. 1994) (noting that the power a union has to exclusively represent all employees entails "a concomitant duty of fair representation to each of its members"). "This duty of fair representation requires a union to satisfy all members' interests without hostility or discrimination, to exercise its bargaining power in good faith and honesty, and to refrain from arbitrary conduct." *See Begeske v. Gen'l Teamsters Union*, No. 09 C 4009, 2010 WL 1541281, at *2 (N.D. Ill. Apr. 16, 2010) (citing *Humphrey*, 375 U.S. at 342, 84 S. Ct. at 368). A union breaches its duty of fair representation only where its conduct toward a union member is "arbitrary, discriminatory, or in bad faith." *Airline Pilots Assoc., Int'l v. O'Neill*, 499 U.S. 65, 67, 111 S. Ct. 1127, 1130 (1991) (quoting *Vaca*, 386 U.S. at 190, 87 S. Ct. at 916)); *Truhlar v. USPS*, 600 F.3d 888, 892 (7th Cir. 2010); *Matthews v. Milwaukee Area Local Postal Workers Union*, 495 F.3d 438, 441 (7th Cir. 2007). When evaluating whether a union breached its duty, the court must consider each of these possibilities separately. *Nemsky v. ConocoPhillips Co.*, 574 F.3d 859, 865 (7th Cir. 2009); *Garcia v. Zenith Elec. Corp.*, 58 F.3d 1171, 1176 (7th Cir. 1995); *see Neal v. Newspaper Holdings, Inc.*, 349 F.3d 363, 369 (7th Cir. 2003) (explaining that "[w]hether or not a union's actions are discriminatory or in bad faith calls for a subjective inquiry and requires proof that the union acted (or failed to act) due to an improper motive"); *Matthews*, 495 F.3d at 441 (describing the court's review of the arbitrariness of a union's decision as "extremely deferential").

Here, Beasley generically asserts that the Union's conduct towards her was arbitrary,

discriminatory and taken in bad faith. (Resp. at 8.) As discussed above, Beasley claims that three specific incidents constitute breaches of the Union's duty to fairly represent her.

Even if we assume that the Union's conduct as alleged by Beasley rises to the level of a breach of the duty of fair representation as a legal matter, Beasley has not presented any evidence from which a reasonable jury could find in her favor. *See Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510. For example, she has no evidence to support her claim that the Union provided Castellano with an attorney to pursue his backpay award, either before or after the bankruptcy. She repeatedly states that "legal representation was maintained with the other grievant," (Resp. at 1, 5, 10), but offers no proof. The only relevant evidence included in her exhibits is a copy of an email she sent Williams on July 4, 2008, in which she asks whether she is being denied the union bankruptcy attorney. (Pl.'s Ex., Beasley July 4, 2008 email to Williams.) But this email does not raise a question of fact on this point, for several reasons. First, in the email, she concedes that even she does not know whether the Union withheld the assistance of bankruptcy counsel from her. Second, the email does not demonstrate that she personally knew whether the Union provided Castellano with counsel and, if so, how she obtained that knowledge.[5] Third, this evidence does not contradict the fact that the Union, through Schwartz, filed a proof of claim on behalf of both Castellano and Beasley with the bankruptcy court. (*See* Williams Decl., Ex. B, Proof of Claim.) Indeed, in response to Beasley's claim, the Union submitted a declaration from Schwartz, wherein he states that he "did not

---

[5] Because Beasley is proceeding pro se, we will consider the factual assertions she makes in her brief, but only to the extent that she could properly testify about the matters asserted at trial—that is, only with respect to those facts within her personal knowledge. *See* Fed. R. Evid. 602.

continue to represent either [Beasley or Castellano] in any backpay or reinstatement issues" after the arbitration, except for the filing of the proof of claim. (Reply at 4 & Decl. of Ronald Schwartz ¶¶ 5–8.) In short, while Beasley offers unsubstantiated theories, "[u]nsupported statements in a brief . . . are not evidence and cannot be given any weight." *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

We reach the same conclusion when evaluating Beasley's claim that the Union lied to the NLRB when it renounced her role at QIS during the investigation of her labor charge. (Resp. at 4, 8.) Her only evidence of the lie allegedly told by Williams is what the NLRB representative, Brodsky, allegedly told her. Even if we accept Williams' alleged statements as admissible, *see* Federal Rule of Evidence 801(d)(2) (providing that the admission of a party-opponent is not hearsay), Beasley did not hear him tell the lie. She has no personal knowledge of the conversation between Williams and Brodsky. Beasley only repeats here what Brodsky told her, offering Brodsky's statement for the truth of the matter asserted: thus, it is inadmissible hearsay. *See* Fed. R. Evid. 801©, 802. Beasley's own self-serving statements, which are speculative and unsupported by specific, concrete facts reflected in the record, cannot preclude summary judgment. *Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Stagman v. Ryan*, 176 F.3d 986, 995 (7th Cir. 1999).

Beasley's claim that Williams lied to the Union's attorney, Schwartz, about whether she provided documentation needed for her backpay calculation fails for the same reason. According to one of her exhibits, Beasley learned from Schwartz that Williams informed Schwartz that she and Castellano were being uncooperative. (Pl.'s Ex., Beasley July 4, 2008 email to Williams ("We contacted attorney Ron Schwartz regarding our issues & learned that

you informed him that we weren't cooperating.").) In his declaration, Williams states that "for several weeks Ms. Beasley refused to provide all of the information, which I had requested." (Def.'s Facts, Williams Decl. ¶ 36.) Thus, Williams asserts that Beasley did not promptly comply with his requests for information relevant to her backpay award. (*Id.*) Beasley presumably disagrees with Williams' representations, but this dispute is irrelevant. Her claim is that Williams wrongfully shared this misrepresentation with Schwartz. (Resp. at 1, 5, 8–10.) As above, however, even assuming that Williams mischaracterized Beasley's level of cooperation when speaking with Schwarz, she did not hear Williams make the statement. Whatever Schwartz told her is hearsay. There is no admissible proof that Williams made any such statement to Schwartz.

More importantly, even if Beasley presented evidence of the purported lie, she has not explained how it is legally significant. In other words, she has not identified how Williams' misstatement to Schwartz had any consequences for her whatsoever. It is undisputed that Schwartz ceased representing her after the arbitration concluded and was not involved in the Union's efforts to obtain the backpay award from QIS after its local facility closed. (Schwartz Decl. ¶¶ 5–8.) When she and Castellano contacted Schwartz for assistance with the backpay issue in March 2008, he told them to deal directly with the Union because he "was not further authorized to act for UAW Local 3212 on any backpay issues." (*Id.* ¶ 6; *see also* Pl.'s Ex., Schwartz March 10, 2008 email to Castellano (instructing Castellano not to contact the arbitrator but to "continue to work through your union and its president, Roosevelt Williams").) Even if Williams lied about Beasley to Schwartz, it did not change the way Schwartz treated her. (Schwartz Decl. ¶ 7.) Because she failed to substantiate Williams' alleged lie to Schwartz or

explain its legal and practical effect, her claim cannot stand. In sum, Beasley has not offered any legal argument or evidentiary support allowing a reasonable trier of fact to conclude that the Union's conduct was arbitrary, discriminatory or in bad faith. *Vaca*, 386 U.S. at 190, 87 S. Ct. at 916.

Before concluding, we add that—based on our review of Beasley's response and its exhibits—the gist of her complaint may be that the Union could have done more to secure her backpay award prior to QIS' filing for bankruptcy on May 5, 2008. She makes much of the fact that she provided Williams with all the necessary documentation for QIS to pay her. (Resp. at 5, 8; *see* Pl.'s Exs., Beasley April 28, 2008 email to Williams; Beasley July 4, 2008 email to Williams.) She seemingly blames Williams for knowing about QIS' financial problems before the bankruptcy but "being strung along" by them and for failing to aggressively pursue her award. (Pl.'s Ex., Beasley July 4, 2008 email to Williams.) She also laments that the Union, through Williams, became unresponsive. (Resp. at 5, 8–9; *see* Beasley April 13, 2008 email to Williams (informing Williams that she will initiate action against the Union if he does not contact her).) Yet, according to her own evidence—questionable though it is—Williams provided Beasley's backpay documentation to QIS on April 16, 2008, several weeks prior to the bankruptcy. (Pl.'s Ex., Williams email to Beasley, printed July 24, 2008 without name or address identification ("The info was sent to [QIS] on April 16, 2008.")

Beasley fails to identify what, if anything, the Union should have done to force QIS to satisfy the award. She also does not explain how the Union could be held liable for QIS' failure to deliver her backpay, particularly in lieu of the intervening bankruptcy. Most importantly, Beasley does not develop this line of argument at all, and we will not engage in further

speculation to do it for her.  As the Seventh Circuit has often said, "summary judgment 'is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.'"  *Koszola v. Bd. of Educ. of City of Chi.*, 385 F.3d 1104, 1111 (7th Cir. 2004) (quoting *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir.2003)).  Beasley has failed to meet this standard.

## CONCLUSION

For the reasons set forth above, we grant the Union's motion for summary judgment.  It is so ordered.

_____
Honorable Marvin E. Aspen
U.S. District Court Judge

Dated: June 14, 2010